## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**CLIMENT-GARCIA**,

    Plaintiff,

    v.

**AUTORIDAD DE TRANSPORTE MARITIMO Y LAS ISLAS MUNICIPIO**,

    Defendant.

CIVIL NO. 16-2513 (MDM)

### OPINION AND ORDER

This is a civil case brought by Plaintiff Laura Climent García (hereinafter "Climent" or "Plaintiff") against her current employer, Autoridad de Transporte Marítimo y las Islas Municipio (hereinafter "ATM" or "Defendant"). Climent alleges that she was discriminated against because of her sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Puerto Rico's Law No. 100 of June 30, 1959 ("Law 100"). Plaintiff also claims that she was subjected to a hostile work environment in violation of Title VII.[1] ATM denied liability and claimed that it had not discriminated against Climent for any reason, including her sex.

A jury trial was held from January 23-25, 2019. Upon Plaintiff's submittal of her case-in-chief, Defendant orally requested and argued for the dismissal of all claims pursuant to Fed. R. Civ. P. 50, Judgment as a Matter of Law. Defendant argued that Plaintiff did not meet her burden of proof for the causes of action raised

---

[1] The Court notes that in addition to Plaintiff's claims pursuant to Title VII and Law 100, Plaintiff scantily mentioned other causes of action in her Complaint. Nevertheless, Plaintiff sought voluntary dismissal of her claim pursuant to Article 1802 of the Puerto Rico Civil Code and, during the several pretrial conferences held in preparation for trial, Plaintiff specifically indicated that her claims were limited to Title VII and Law 100 sex discrimination.

in the Complaint and that dismissal at that time was proper. Plaintiff verbally opposed Defendant's petition.

For the reasons explained below, Defendant's Motion for Judgment as a Matter of Law under Fed. R. Civ. P. 50 is **GRANTED.**

## I.    Legal Standard for Judgment as a Matter of Law

Under Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. Rule Civ. P. 50(a); *see, also Weisgram v. Marley Co.,* 528 U.S. 440, 447-448, 120 (2000); *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149 (2000).

In ruling on a Rule 50 motion, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Reeves,* 530 U.S. at 150–51; *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554-555 (1990); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby, supra,* at 255. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *See Wright & Miller* 299. That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Liberty Lobby, supra,* at 300.

The motion is properly granted when the evidence and inferences reasonably drawn therefrom, viewed most favorably to the non-movant, in this case Plaintiff Climent, permit only one reasonable conclusion. *Colasanto v. Life Ins. Co. of N. Am.*, 100 F. 3d 230, 208 (1st Cir. 1996).

In *Liberty Lobby, Inc.,* 477 U.S. at 250-251, the Supreme Court held that the standard for granting a motion for summary judgment under Rule 56 is the same as

that for granting a directed verdict under Rule 50. The Court explained this standard as follows:

> [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;* there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252 (emphasis added).

## II.   <u>Discussion</u>

The Court reasserts and incorporates herein the reasoning articulated in its verbal ruling granting Defendant's motion for judgment as a matter of law against the Plaintiff with respect to all claims raised in the present litigation.

### 1.   <u>Disparate Treatment Under Title VII</u>

Plaintiff Climent alleges that ATM subjected her to disparate treatment because of her gender, in violation of Title VII and Law 100. More specifically, Plaintiff claimed that ATM did not select her for the positions of Operations Manager and Maintenance Supervisor because she is a woman.

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." Pub.L. 88–352, § 704, 78 Stat. 257, as amended, 42 U.S.C. § 2000e–2(a). *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56, (2006).[2] In this case, Plaintiff did not present direct evidence of discrimination, therefore, the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies.

---

[2] "Law 100 is a broad antidiscrimination statute analogous to Title VII in many respects." *Perez–Cordero v. Wal-Mart Puerto Rico, Inc.,* 656 F.3d 19, 26 n.10 (1st Cir. 2011) (citing *Monteagudo v. Asociación de Empleados del ELA,* 554 F.3d 164, 169 n.3 (1st Cir. 2009) (describing Law 100 as an analogue to Title VII)).

As set forth in *McDonnell Douglas Corp.*, *id.*, the basic allocation of burdens and order of presentation of proof in a Title VII case is as follows. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). First, the plaintiff has the burden of proving, by a preponderance of the evidence, a *prima facie* case of discrimination. *Id.* (referencing *McDonnell Douglas Corp.*, *supra*.) This task "is not onerous." *Texas Dep't of Cmty. Affairs, id.* at 253. Second, if the plaintiff succeeds in proving a *prima facie* case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 248 (citing *McDonnell Douglas Corp.*, at 802). Third, if the employer demonstrates such reason, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.*

When a plaintiff alleges discrimination resulting in a Title VII violation, the plaintiff must first prove a *prima facie* case by showing that: (1) she belonged to a protected class, (2) she was qualified for the position and performed her job satisfactorily, (3) her employer took an adverse employment action against her, and (4) her employer continued to have her duties performed by a comparably qualified person or her position remained open or was filled by a person whose qualifications were similar to hers. *See Burns v. Johnson*, 829 F.3d 1, 8-9 & n.9 (1st Cir. 2016) (explaining methods of proof); *Douglas v. J.C. Penney Co.*, 474 F.3d 10, 13–14 (1st Cir. 2007). The fourth element has also been characterized as "similarly situated individuals outside [her] protected class were treated more favorably." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.,* 225 F.3d 1115, 1123 (9th Cir.2000). *See also Texas Dep't of Cmty. Affairs*, 450 U.S. at 249 (describing fourth element as "similarly situated employees were not treated equally").

In establishing her *prima facie* case, Plaintiff must present enough evidence to permit a finding that there was differential treatment in connection with an adverse employment action, and that the challenged decision was caused at least in part by a

forbidden type of bias. *See Bonilla-Ramirez v. MVM, Inc.*, No. CV 15-1586 (PAD), 2017 WL 2712884, at *9 (D.P.R. Mar. 30, 2017), *aff'd,* 904 F.3d 88 (1st Cir. 2018).

Plaintiff alleged in the Complaint, and presented evidence during trial, that she was not selected by ATM for two positions that she had applied for and claims that ATM's failure to hire her for both positions constituted discrimination because of her sex. The Court addresses each position in turn.

### A.    *Operations Manager*

After evaluating the evidence presented by the Plaintiff at trial, the Court found that Plaintiff failed to establish a *prima facie* case of sex discrimination with regards to her failure-to-hire claim for the Operations Manager position.

Plaintiff testified during trial that she applied for the Operations Manager position several times in or around August 2012. Plaintiff also attested that Arturo Rodríguez was ultimately selected for the position.

The Court found that Plaintiff met the first prong of the *prima facie* case because she is a woman. The Court also found that Plaintiff met the third prong by establishing that she was not selected for the position. Plaintiff, however, fell short of satisfying her *prima facie* burden because she did not present sufficient evidence to establish prongs two and four.

Regarding the second element, whether Plaintiff was qualified for the position of Operations Manager and whether she performed her job satisfactorily, Plaintiff did not present evidence of any kind as to the qualifications required for the Operations Manager position, nor did Plaintiff present any evidence to show that she was indeed qualified for the position, nor that she met her employer's legitimate expectations to perform the job satisfactorily. As such, Plaintiff failed to meet the second element of the *prima facie* case. This is fatal to Plaintiff's claim because she must meet all four elements to successfully establish a *prima facie* case of sex discrimination.

The Court nevertheless delved further into the analysis and evaluated whether Plaintiff met the fourth prong of the test. In the same manner that Plaintiff failed to establish the second element, she also failed to satisfy the fourth element because

Plaintiff did not come forward with any evidence showing that similarly situated individuals outside the protected class were treated more favorably than her.

Plaintiff testified that she was the only woman who applied for the position, and the other two candidates were men. Plaintiff, however, did not present any evidence demonstrating that she was equally or more qualified than the other two applicants. One of the applicants was Arturo Rodríguez, who was ultimately selected for the position. Although Mr. Rodríguez is a man, and therefore, not a member of the protected class, Plaintiff admitted that she had no personal knowledge about Mr. Rodríguez' qualifications and has never read his résumé. The evidence offered by Plaintiff regarding Mr. Rodríguez' qualifications was limited solely to Plaintiff's testimony, which only showed that Mr. Rodríguez had worked with "big crate things" prior to being hired by ATM. Plaintiff could not identify Mr. Rodríguez's prior position(s) nor the years of experience he had in his prior jobs.

The only evidence presented by Plaintiff regarding Mr. Rodríguez's qualifications in comparison to hers was that, in her opinion, she was more qualified than the other two applicants, and, indeed, more qualified than Arturo Rodríguez, who was the only candidate she knew personally. Fundamentally, Plaintiff relied on her own subjective opinion that her qualifications were superior to those of the successful candidate. That alone fails to meet the required burden because a plaintiff's subjective view of her qualifications, without any other evidence, cannot make out the fourth element of the *prima facie* case.

It is well-established that a party's subjective opinion as to her qualifications is insufficient to make out the *prima facie* qualification element. *See e.g. Wagner v. Crawford Cent. Sch. Dist.,* No. CIV.A. 04-264ERIE, 2008 WL 901959, at *10 (W.D. Pa. Mar. 31, 2008) (a plaintiff's subjective opinion as to her qualifications or performance is insufficient. An employee's view of his or her performance is irrelevant); *Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 42 (5th Cir. 1996) (a plaintiff must provide sufficiently specific reasons for [her] opinion; mere subjective speculation will not suffice); *Billett v. Cigna Corp.,* 940 F.2d 812, 825 (3rd Cir.1991),

overruled in part on other grounds by *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993) ("what matters is the perception of the decision maker," and not that of the employee); *Pfeifer v. Lever Bros. Co.*, 693 F. Supp. 358, 365–66 (D. Md. 1987), *aff'd,* 850 F.2d 689 (4th Cir. 1988) (the self-perception of a plaintiff in an ADEA or Title VII suit as to his or her other qualifications is irrelevant; what matters is "the perception of the decision-maker").

Regarding the second applicant, Plaintiff could only state that he was a man. Plaintiff could not identify the name of this individual, let alone his qualifications.

Therefore, even viewing the evidence in the light most favorable to the Plaintiff, Plaintiff did not present legally sufficient evidence to meet the fourth element of a *prima facie* case for failure-to-hire, that is, that a similarly-situated individual outside the protected class was treated more favorably than her.

Accordingly, by failing to establish elements two and four of the requisite *prima facie* case, Plaintiff failed to make out a viable claim under Title VII as to her failure-to-hire claim for the Operations Manager position. Because there is no legally sufficient evidentiary basis for a reasonable jury to find for the Plaintiff on this claim, judgment as a matter of law must be entered and Plaintiff's claim must be **DISMISSED with prejudice**.

### B.    *Maintenance Supervisor*

After carefully evaluating the evidence presented by the Plaintiff at trial, the Court found that Plaintiff failed to establish a *prima facie* case of sex discrimination with regards to her failure-to-hire claim for the Maintenance Supervisor position.

Similar to the Operations Manager position, the Court found that Plaintiff met the first prong of the *prima facie* requirement because she is a woman and that she met the third prong by establishing that she was not hired for the sought-after-position. Plaintiff fell short, however, in satisfying her *prima facie* burden because she did not present sufficient evidence to establish prongs two and four.

As to the second element, whether Plaintiff was qualified for the position, Plaintiff presented a letter from the former Director of Human Resources of ATM,

Gladys Fuentes, which stated that the Maintenance Supervisor position required at least two years of experience in "physical plant maintenance." (*See* Docket No. 94-2). Plaintiff admitted that while she had previously held the position, albeit on an interim basis, she nevertheless had only 6 months experience in the required role. During her testimony, Plaintiff recognized that the position indeed required two years of experience in physical plant maintenance, which she did not have.

Furthermore, the letter presented by Plaintiff was a contemporaneous document prepared by ATM's Human Resources Department, and the person who prepared the document, Ms. Fuentes, was called by Plaintiff to testify at trial. Ms. Fuentes confirmed that she was the person tasked with examining the qualifications of the applicants for the position and, with respect to that position, she concluded that Plaintiff did not meet the required qualifications. Plaintiff did not question Ms. Fuentes' decision.

Based on the foregoing, the Court found that the evidence presented by Plaintiff demonstrated that, indeed, she was not qualified for the position. As such, Plaintiff failed to meet the second element of the *prima facie* case because she did not meet her employer's qualifications for the position of Maintenance Supervisor. By failing to meet the second prong of the *prima facie* case, the Plaintiff's claims with regards to this position did not pass muster.

With respect to the fourth element, namely, whether similarly situated individuals outside the protected class were treated more favorably than Plaintiff, her case falls short as well. During trial, Plaintiff failed to present any evidence showing that other applicants even applied for that position. In fact, there was evidence that Plaintiff's so-called application was essentially a request to be promoted to the Maintenance Supervisor position rather than an actual application in response to a vacancy announcement. The evidence showed that Plaintiff noticed a potential opening and decided, on her own, to ask to be considered for that position. While she was not ultimately selected for that position, Plaintiff testified at trial that, as of the date of her testimony (January 23-24, 2019), that position had never been filled.

As a result, there was no evidence presented at trial that a person equally qualified as Plaintiff was ever hired for the position. In addition, Plaintiff did not identify even one similarly situated person who was treated differently than she was with regards to that position. Again, no one was hired and there was no evidence of any other applicants. Such a lack of evidence proves fatal to Plaintiff's failure-to-hire claim.

Viewing the evidence in the light most favorable to Plaintiff, there was simply no evidence of any kind that a similarly situated individual outside the protected category was treated more favorably than she was with regard to the Maintenance Supervisor position. Accordingly, Plaintiff failed to meet the fourth element of a *prima facie* case.

In sum, by failing to meet the second and fourth prongs, Plaintiff failed to make out the requisite *prima facie* case for a failure-to-hire claim for the position of Maintenance Supervisor under Title VII. Plaintiff thus failed to meet her initial evidentiary burden to make out a viable claim. Because there is no legally sufficient evidentiary basis for a reasonable jury to find for the Plaintiff on this claim, judgment as a matter of law must be entered and Plaintiff's claim must be **DISMISSED with prejudice**.

In the same manner, because Plaintiff's sex discrimination claims for failure-to-hire fail under federal law, her analogous claims pursuant to Law 100 are equally insupportable and must suffer the same fate as her Title VII claims. Where a plaintiff has "adduced no significantly probative evidence that [the adverse employment action] was motivated by [discriminatory animus]," summary judgment on a pending Law 100 claim is appropriate. *Cerezo-Martin v. Agroman*, 213 F. Supp. 3d 318, 327–28 (D.P.R. 2016) (dismissing Law 100 discriminatory discharge claims because the plaintiff's discriminatory discharge claims under Title VII failed as a matter of law). *See also Dávila v. Corp. de Puerto Rico Para La Difusión Pública*, 498 F.3d 9, 18 (1st Cir. 2007); *Perez–Cordero v. Wal-Mart Puerto Rico, Inc.*, 656 F.3d 19, 26 n.10 (1st Cir. 2011) ("Law 100 is a broad antidiscrimination statute

analogous to Title VII in many respects."); (*citing Monteagudo v. Asociación de Empleados del ELA*, 554 F.3d 164, 169 n.3 (1st Cir. 2009) (describing Law 100 as an analogue to Title VII).

As described above, Plaintiff's Title VII claims fail under federal law because the evidence offered by Plaintiff during trial is insufficient to make out a *prima facie* case by failing to show that ATM's conduct was motivated by sex discrimination. Accordingly, Plaintiff's Law 100 sex discrimination claims must be **DISMISSED with prejudice**.

2.    Hostile Work Environment Based on Sex under Title VII

Plaintiff alleges to have been subjected to a hostile work environment in the workplace, beginning around 2012, because of her sex. Hostile work environment is a form of unlawful discrimination prohibited by Title VII. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 106 (1986). In such cases, the Supreme Court has held that the plaintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered. *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013). *See, e.g., Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, (1993) (Title VII offers employees protection from a "workplace [ ] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.")

To establish a *prima facie* case for a hostile work environment claim, the plaintiff must prove that: (1) [she] is a member of a protected class; (2) [she] was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic, such as sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment; (5) the objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the plaintiff in fact did perceive it to be so; and (6) some basis for employer liability has been established. *Douglas v. J.C. Penney Co.*, 474 F.3d 10, 15 (1st Cir.2007); *O'Rourke v. City of Providence,* 235 F.3d 713, 728 (1st Cir.2001).

Certainly, the objectionable conduct must be based on plaintiff's statutorily protected characteristic. *Ponte v. Steelcase, Inc.,* 741 F.3d 310, 319-320 (1st Cir. 2014); *Rivera v. Puerto Rico Aqueducts and Sewers Authority*, 331 F.3d 183, 188 (1st Cir. 2003).

After analyzing the evidence presented at trial in a light most favorable to Plaintiff, and applying the above framework, the Court found that Plaintiff did not present a legally sufficient evidentiary basis to establish a *prima facie* case of hostile work environment under Title VII.

The Court found that Plaintiff met prongs one and two of the *prima facie* inquiry. More specifically, the Court determined that because Plaintiff is a woman, she is a member of a protected class, and also determined that Plaintiff proffered testimony that she suffered unwelcome harassment. The Court also found that prong six, the employer liability element, was met because the alleged harassers were Plaintiff's supervisors (Victor Cotto and Arturo Rodríguez) and, therefore, vicarious liability would attach to ATM based on the supervisor's harassment. Notwithstanding that, however, the Plaintiff fell short in meeting her *prima facie* burden because she failed to meet elements three, four, and five.

More specifically, Plaintiff failed to meet the requisite third element of a *prima facie* case, namely that the harassment was based on a protected characteristic, in this case, the Plaintiff's sex. Plaintiff testified as to approximately seven or eight specific situations that she claims constituted a hostile work environment. Nevertheless, the evidence presented by the Plaintiff, even when viewed in the light most favorable to her, failed to establish that the objectionable conduct was linked in any way to Plaintiff's gender. The Court briefly summarizes the more serious incidents in turn.

The first incident, dubbed the "Kmart incident," can be described as follows: Plaintiff admitted that she left the workplace for a short period of time, together with another ATM employee, to tend to a non-work-related matter at Kmart. Plaintiff testified that upon seeing her at Kmart, one of her supervisors gave her a reprimand. Even assuming that Plaintiff was reprimanded for this incident, and that such

reprimand constituted unwelcome harassment, there was no evidence to support a finding that the conduct was in any way linked to Plaintiff's gender.[3]

The second incident, dubbed the "failure to fuel the vessels incident," can be described as follows: The Plaintiff indicated that one of her supervisors "wrote her up" for refusing to put fuel in one of the vessels while in port. Plaintiff testified that her refusal was based on her belief that it was not in her job description to fuel-up the vessels. Even assuming that being "written-up" for this incident constituted unwelcome harassment, there was no evidence linking this incident to Plaintiff's sex.

The third incident proffered by Plaintiff had to do with her being asked to attend a work-related seminar, only to be later told by a supervisor *not* to attend that same seminar because it was full. She claims that the same supervisor who had told her not to attend later criticized her for not attending. As with the prior incidents, even assuming that such criticism constituted unwelcome harassment, Plaintiff did not present any evidence that this incident was related to her sex.

The fourth incident involves a complaint by the Plaintiff that her supervisor Victor Cotto yelled at her in front of passengers and in front of other employees at the ferry terminal. Even assuming that this constituted unwelcome harassment, such occurrence lacked the necessary link between the conduct complained of and Plaintiff's sex.

The fifth incident involves a complaint by the Plaintiff that she was assigned to work a 6-month shift in the island municipality of Culebra. With respect to this incident, there was conflicting testimony at trial as to who had actually recommended that Plaintiff be sent to Culebra. Plaintiff's own witness, Mr. Efraín Ramos, who testified very favorably for Plaintiff, stated that he was going to be re-assigned to Culebra, but that he had requested that his supervisor send the Plaintiff instead. Mr. Ramos testified that he believed that Plaintiff would have welcomed such a

---

[3] The Court notes that there was evidence presented during trial that, following a review of the incident, Plaintiff did not receive any disciplinary action for her conduct related with the Kmart incident.

transfer given the fact that she was born in Culebra and still had family who lived there. Plaintiff, on the other hand, insinuated in her testimony that such a transfer was unwelcome and harassing. Irrespective of whether such a temporary re-assignment was unwelcome, there was no evidence of any kind that Plaintiff's temporary assignment to Culebra was in any way related to her sex.

The sixth incident relates to complaints about where the Plaintiff parked her car on one or more occasions. Plaintiff testified at trial that she was written-up for having parked her car in a supervisor's parking spot for parking in such a way as to block the fueling area for trucks or vessels. Plaintiff admitted that she had parked incorrectly and that her supervisor had demanded that she move her vehicle. Plaintiff testified, however, that she told her supervisor that she would move her vehicle as soon as she finished loading the vessel because the passengers were boarding at that moment. Even assuming that that incident constituted unwelcome harassment, there was no evidence that it was related to Plaintiff's sex.

The seventh incident had to do with a complaint by Plaintiff that she had been excluded from a supervisor's meeting and that her supervisor, Victor Cotto, had shut the door of the office where the meeting was taking place in her face. While this certainly can be viewed as rude and insensitive behavior, there was no evidence that the conduct was linked to Plaintiff's sex. There was no evidence, for example, to determine what the meeting was about, whether Plaintiff should have been invited and what the purpose was for excluding her. Nor was there any evidence whatsoever to infer that women were excluded from the meeting and men were included.

Simply put, the evidence offered by Plaintiff pointed to several stand-alone incidents of alleged harassment having nothing to do with Plaintiff's sex. Moreover, the evidence on the record did not demonstrate any pattern of conduct in that the specific incidents described appear to have occurred over a period of four years, from approximately 2012 to 2016. Such isolated incidents or actions by Plaintiff's supervisors are not evidence of an intention to invidiously discriminate against Plaintiff or an intention to "harass" her because of her sex. "These generalities and

vagueness are fatal. They lack the "sex" component." *See Bonilla-Ramirez v. MVM, Inc.*, No. CV 15-1586 (PAD), 2017 WL 2712884, at *13 (D.P.R. Mar. 30, 2017), *aff'd*, 904 F.3d 88 (1st Cir. 2018).

For instance, there was no evidence to show how many female employees worked at ATM, no evidence to show how many male employees worked at ATM, nor was there any evidence to demonstrate how, if at all, men and women were treated differently at ATM. In addition, and what is fatal to Plaintiff's claim, is the fact that there was no evidence of any kind to prove that men were treated differently and more favorably than her, or that under similar circumstances, Plaintiff was treated unfavorably or more harshly than any of her male counterparts. There was simply no evidence of any kind linking the objectionable conduct to Plaintiff's gender. Absent a direct link to Plaintiff's gender, the Court cannot find that the Plaintiff presented sufficient evidence to satisfy the third element of her *prima facie* case.

Indeed, the Court viewed all the alleged hostile or abusive incidents offered by the Plaintiff in a light most favorable to her and viewed them in the aggregate. Even so, based on the totality of the circumstances, the evidence presented by Plaintiff is insufficient to sustain her hostile work environment claim because, even considering all of the incidents as a whole, they hardly constitute material evidence upon which a reasonable jury could rely in finding that ATM discriminated against Plaintiff on the basis of her sex.

Nevertheless, even if Plaintiff had satisfied the third prong, which she did not, it is not enough for a plaintiff to show only that she suffered mistreatment because of her gender. To rise to the level of an actionable hostile work environment, the complained-of-conduct must have been sufficiently severe or pervasive to have altered the conditions of her employment such that it created an abusive working environment. *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, (1986). This standard refers to the fourth and fifth elements of a *prima facie* case for hostile work environment.

During trial, Plaintiff did not offer evidence that would support a finding that her work environment was "objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so." *Noviello v. City of Boston,* 398 F.3d 76, 92 (1st Cir.2005); *Douglas v. J.C. Penney Co.*, 474 F.3d 10, 15 (1st Cir. 2007).

In determining whether a reasonable person would find particular conduct hostile or abusive, a court must mull over the totality of the circumstances, including such factors as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Noviello*, 398 F.3d at 92 (*citing* F*aragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998) (quoting *Harris,* 510 U.S. at 23). The thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment. *Faragher,* at 788.

Along this continuum, rudeness or ostracism, standing alone, usually are not enough to support a hostile work environment claim. *Noviello*, 398 F.3d at 92. *See Manatt v. Bank of Am.,* 339 F.3d 792, 803 (9th Cir.2003); *Gagnon v. Sprint Corp.,* 284 F.3d 839, 850 (8th Cir.2002); *cf. Simas v. First Citizens' Fed. Credit Union,* 170 F.3d 37, 52 n. 12 (1st Cir.1999) (noting, in related context, that "social ostracism alone is rarely actionable"). Lack of professionalism and common courtesy are insufficient to configure a hostile or abusive work environment. *Bonilla-Ramirez v. MVM, Inc.*, No. CV 15-1586 (PAD), 2017 WL 2712884, at *13 (D.P.R. Mar. 30, 2017), *aff'd,* 904 F.3d 88 (1st Cir. 2018). *See, Lee-Crespo v. Schering-Plough*, 231 F.Supp.2d 420, 429-430 (D.P.R. 2002), *aff'd* 354 F.3d 34, 46-47 (1st Cir. 2003) (so holding).

The anti-discrimination laws were not enacted to create or enforce a "general civility code." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 82 (1998) (holding that courts must proceed with "[c]ommon sense, and an appropriate sensitivity" to distinguish between general vulgarity that Title VII does not regulate

and discriminatory conduct or language "which a reasonable person in the plaintiff's position would find severely hostile or abusive").

Here, to a significant extent, the conduct that Plaintiff complained of is that she was being "picked on" by Victor Cotto, and at other times by Arturo Rodríguez, and that she faced some "unpleasant, vicissitudes of the workplace." *Faragher,* at 788. There was, however, no evidence of the frequency or severity of the conduct complained of, nor evidence that it was physically threatening or humiliating, nor evidence that the unwelcome conduct unreasonably interfered with Plaintiff's work performance. In the absence of other proof, statements of the sort relied upon by the Plaintiff are insufficient to make out a viable claim. Such a lack of evidence is fatal to Plaintiff's claim, especially because personality conflicts do *not* make up an actionable claim for hostile work environment. *See, Vore v. Indiana Bell Telephone Co., Inc.*, 32 F.3d 1161, 1162 (7th Cir. 1994) (pointing out that "personality conflicts between employees are *not* the business of the federal courts"); *Divers v. Metropolitan Jewish Health Systems*, 2009 WL 103703, *18 (E.D.N.Y. Jan. 14, 2009) (dismissing hostile environment claim in part because discord resulted from personality conflicts).

Here, the Court found that the evidence presented during the trial did not rise to the level to meet the "severe or pervasive" standard in order to survive as a viable claim, and therefore, the evidence was insufficient to make out a *prima facie* case of hostile work environment because of Plaintiff's sex. *See, Bonilla-Ramirez v. MVM, Inc.*, supra; *Lee-Crespo*, 231 F.Supp.2d at 429 (summary judgment dismissing sexual harassment action because plaintiff failed to establish that her workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment); *McCann v. Tillman,* 526 F.3d 1370, 1378-79 (11th Cir.), *cert. denied,* __ U.S. __, 129 S. Ct. 404, 172 L.Ed.2d 286 (2008) (holding that, "[a]lthough offensive, such instances of racially derogatory language alone, extending over a period of more than two years, [were] too sporadic and isolated to establish that her employers'

conduct was so objectively severe or pervasive as to alter the terms and conditions of her employment.")

As such, when viewed through a lens most favorable to Plaintiff, the evidence relied upon by Plaintiff during trial is vague and hardly material proof of invidious workplace harassment discrimination on the part of ATM because of Plaintiff's sex. Accordingly, the Court found that judgment as a matter of law was warranted because a reasonable jury did not have a legally sufficient evidentiary basis to find in favor of Plaintiff on her Title VII hostile work environment claim. Under these circumstances, the hostile work environment claim must be **DISSMISED with prejudice.**

Because the Court determined that Plaintiff's Title VII hostile work environment claim should be dismissed, Plaintiff's analogous claim under Law 100 must suffer the same fate and must thus be **DISMISSED with prejudice**. Courts in this district have held that hostile work environment claims brought pursuant to Law 100 are "essentially the same as a Title VII hostile work environment claim." *See Aponte–Rivera v. DHL Solutions (USA), Inc.*, 2010 WL 376330, *2 (D.P.R. 2010) (Leinenweber, J.) (collecting cases); *see also Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 49, 56 (1st Cir. 2000) (using Title VII hostile work environment precedents to construe Puerto Rico law.)

### III.    <u>Conclusion</u>

The Court concluded that Plaintiff failed to produce legally sufficient evidence of unlawful sex discrimination sufficient to defeat a judgment against her as a matter of law. For the aforementioned reasons, Defendant's verbal Motion for Judgment as a Matter Law, pursuant to Fed. R. Civ. P. 50(a)(1)(B), is **GRANTED** with regard to Plaintiff's sex discrimination claims under Title VII and Law 100. Also, for the aforementioned reasons, the Court enters Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(a)(1)(A) with regard to Plaintiff's hostile work environment claim under Title VII and Law 100. Consequently, the Court hereby **DISMISSES with prejudice** all causes of action against Defendant.

*Climent-Garcia v. Autoridad de Transporte Maritimo y Las Islas Municipio*
Civil No. 16-2513 (MDM)
Page 18

Judgment will be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of February, 2019.


<u>***s/Marshal D. Morgan***</u>
MARSHAL D. MORGAN
United States Magistrate Judge